Next case on the docket is Lupa v. Lupa, 5-10-0426. Mr. Boxerman. Yes, Your Honor. Good morning. You may proceed. May it please the Court. I am Sandy Boxerman. I represent the appellant, Leonard Lupa, in this appeal. We are appealing from paragraph 9 of the trial court's April, I think it's April 12, 2010 order, which is a ruling on a lot of things, but paragraph 9 is the only one that we're appealing from in this case. Paragraph 9 dealt with a petition for sanctions, motion for sanctions and or petition for contempt that the wife, Mrs. Lupa, had filed in May of 2009, and then again she filed a motion in January of 2010, motion for sanctions and other relief. In paragraph 9, the trial judge did three things. Number one, after a pretty lengthy discussion of federal tax law, the trial court ruled as a matter of substantive tax law that Mr. Lupa could not deduct on his federal income tax returns any payments he made to the wife that were pursuant to the decree of divorce, saying he had to pay a certain percentage of his federal annuity, like a pension. Let me ask a question. Is the central issue here, the central problem, who pays the taxes on the division of the pension? Yes. Because it appears to me that the trial court ordered that it be divided a certain way in the future, which then was going to require that each pay their own taxes on their share, but during the interim until a quadro was entered, he said net, and therein lies the problem. Is that right? Correct. So the question is who's going to pay the taxes on that 27.5% in the meantime? Exactly right. So at the time of the entry of the original judgment, did the trial court express anything about why there was a difference between those two? Not as far as, neither Mr. Portman nor I were the attorneys in the case at that time, but as far as the record indicates, I can't find anything. Any reason why they wouldn't be treated the same during the time after the judgment was entered, but before the quadro was entered as after, meaning she would pay the taxes on her 27.5%? Well, it's just that word net. It's that word net. Now, the word net served another purpose, and there was a big part of the contested hearings below had to do with the word net, what it meant, and that was fought over by the parties, and the judge ruled in Mrs. Luper's favor, and our notice of appeal suggested we were going to raise that. We're not. We didn't waive it. We're living with it. I think net was there because, you know, you have a gross amount, then you have a number of deductions, and then you get to the net number, and the question was did net mean the figure after all the deductions, or did it mean the figure after only certain deductions, in particular the federal withholding? But I don't think you can use the word net as tantamount to a ruling by the divorce court in October of 2008 that Mrs. Luper cannot deduct these. I think that flows. That's what the trial court ruled, that they use the word net, but the tax consequences of that are going to flow through the application of tax law. Well, let me, let me, I think this seems to me at least to be the heart of the matter. I couldn't hear you. The trial court made this order and told Mr. Luper what he could and could not do. Isn't that qualitatively different than a circuit judge saying I am interpreting the federal tax code? There's no question that a circuit judge does not have the jurisdiction to, in effect, preempt the tax court or the tax code, but doesn't the circuit judge have jurisdiction over the parties and can tell them what action they can and cannot take as far as tax, as far as representations to the taxing authority, and by statute in Illinois in making these decisions, isn't the circuit court required to consider that? Yes to the latter part. No to the first part. Okay. Fair enough. I did ask a compound question. That's all right. That's fine. That's all right. If I'm getting my questions straight, I think that's fine. No, you did. You did. Here's what the trial court in April of 2010 said in the order that's on appeal here. You cannot deduct these payments on your return. You cannot send 1099s. It's our position that only the IRS can make that call. But, no, that's not my question. Cannot the circuit judge, doesn't the circuit judge have the authority to tell one of the parties in front of them what they are allowed to do or not do in the filing of their federal taxes because they are part of the divorce or post-divorce proceedings and part of the obligations that the circuit judge has to discharge as far as distribution of the assets and considering the tax consequences of that distribution? The statute absolutely lists as a factor in dividing properties that the court should consider. Right. I can't, of course. But the first part, I've been looking at this and we are looking at this from Mr. Lupa's perspective. The reason the answer is no is if you look at it from Mrs. Lupa's perspective. The trial court, we all agree that the IRS and federal system declares what the tax law is, but your question is can the court order Mr. Lupa don't deduct this amount? Yes. Well, that's the same thing. Either affirmatively do something or not to do something. Well, if that's the ruling of the court, here's the problem that's going to cause. If that's what the divorce court is saying to Mr. Lupa, then they're also saying to Mrs. Lupa, you don't have to include that in income. And if the IRS comes along and audits Mrs. Lupa down the road and says you should have included it in income, you're going to have a real problem. Well, the IRS can do many things and not necessarily predictable things. But doesn't the circuit judge have jurisdiction over Mrs. Lupa too and say I'm ordering Mr. Lupa to do A, B, and C, and Mrs. Lupa in discharge of my obligations to resolve this case? These are going to be the consequences that fall to you. Don't they stand on an equal footing as far as that's concerned? If I'm understanding the question right, I just don't think by framing it as I'm not declaring what the tax law is, but I'm going to order you not to deduct and I'm going to say you don't have to include it in income. Doesn't the court have to take into consideration tax consequences? Yes. Oh, yeah. But that's absolutely right. I mean, it's best put, this Pecune case from the 3rd District that we quoted in our brief, it says no state is empowered to designate a transaction as taxable or non-taxable. Only the federal government can do that. But what the trial court can do is make its ruling based on what it thinks. This is where predictability comes in. Based on what it thinks the tax consequences of that are going to be and then let the tax consequences fall where they fall and the trial court will be right or the trial court will be wrong. There are a couple of limited instances where the tax law does allow the trial court and a state divorce court to do exactly what you're saying, and that is on child exemptions the trial court can order a party to execute a certain form that gives the exemption for the child to the non-custodial parent. But that's because the tax law explicitly allows such a form to be executed and such a deduction, I keep saying deduction, exemption to be shifted. But that's different from the trial court saying even if the tax law says this is a deductible payment, you can't deduct it because it's going to have an effect on the income side. There's a second reason in this particular case why the trial court did not have jurisdiction to do in its April 2010 order what it did, and that is that we contend in the brief that that actually amounts to a modification of the property division portions of the October 2008 award. The October 2008 decree was silent as to taxes, and you can't come back later and engraft new obligations, that's the word from the Hubbard case that we cite in our brief. You can't come back in the guise of interpreting or enforcing, you can't change it. And so that's an independent reason why in this case we argue that the trial court lacked jurisdiction in April 2010 to do what it did. Our position is the October 2008 decree says what it says, and the tax consequences will follow. Mr. Lupo, based on that, took a position on his return. He's not been audited, but if he has, he'll either be right or he'll either be wrong. And the federal procedures for making that determination will come into play. If this paragraph 9 of the April 2010 order is allowed to stand, Mr. Lupo will be foreclosed from being able to use the federal procedures to determine whether that deduction was right or whether that deduction was wrong. And that's a big thing. In their brief on page 18, the appellee says nothing in the court's order of April 12, 2010, prohibits Leonard in any way from challenging any taxability issues in the federal court system or through the Internal Revenue Service. That's just not the case. If Leonard complies with the April order, then he's done. He has to amend the return to forego the deduction, and he can't then claim the deduction through the system. So that's a very big problem with the April 2010 order and a reason why it needs to be reversed as to paragraph 9. We also make the point, which is somewhat of a small point in point 1 of our brief, that paragraph 9 said that Mr. Lupo is in contempt for his violation of the court's order, meaning, I guess meaning the decree of 2008. But nowhere did that decree say you have to pay all the taxes, you can't take the deduction, you can't issue 1099s. If those are the acts that the trial court felt brought Mr. Lupo within contempt, those are not acts that he was ever ordered to do or not to do, and it's elementary law of contempt that you can't be found in contempt for doing something that a prior decree didn't forbid you from doing or not doing something that a prior decree didn't order you to do. But that would only reverse the finding of contempt and the $20 fine. As to the larger issue for the reasons that I hope I'm explaining, we feel that the trial court did not have the jurisdiction both because of the modification reason and because of the intrusion on the federal ability to enforce the tax law to declare this is not your deduction, you can't take it, you can't issue 1099s. Now that was those orders, don't issue 1099, so forth, don't take the deduction, those were all part of purging himself from his contempt? Yes. Okay. So if the contempt goes out, those orders go out. Yes. Yes. Yes. And then what would happen. Which makes it a bigger thing than the little thing you talked about earlier. Well, you're right, because it would start a procedural. What would happen is if the court's declaration stood and Mr. Lupo didn't do it, then there would be a new filing and a new round, but then there would be a specific direction. You're right. Well, that's what I'm saying. If the contempt order is no good, then he can't be ordered to do these things or not do these things in order to purge himself of his contempt. That's right. Okay. I agree with that. I shouldn't have minimized it, but I think I've been so focused on whether the trial court could make these declarations. You're just saying that he might then have to come back and modify the court order ordering him to do that, and then if he doesn't do it, then hold him in contempt again based upon these new orders. Well, what I'm saying is if you accept our argument, none of that's going to happen. If you agree that it can't be contempt for the reasons stated, but the trial court could make declarations about the tax, you know, the tax effect, then I think procedurally what would happen, I think, is there would be some kind of purported interpretation of the divorce decree, and then he'd make the same declaration that he's made now as part of the purge of the contempt, and then Leonard would have to follow it or risk being in contempt. But I still say he can't go back and make these declarations about the deduction because that would be an impermissible modification of the October 2008 divorce decree and because of the tax situation that we've also been discussing. And all of this, though, is just about this interim period until the quadro is in there. That's absolutely correct. You know, I mean, there's no dispute about what the quadro says and how it's going to be divided again. That's absolutely correct. How long was the period? Was it like 27 months or something? No, it was – there was a 26-month period prior to the party's separation. That's one period. Then there was a period from the first divorce decree through when the OPM started paying directly to WIFE, and that was roughly from September of 2007 through the beginning of June or July of 2009. And then after that June or July of 2009, there's no issue because OPM is paying directly to WIFE. So it was about maybe a little over a year and a half that unfortunately spanned three tax years. That's correct. Okay. That's correct. All right. So for those reasons, we ask the Court to reverse Paragraph 9 of the Court's April 12, 2010 decree and also to send back the attorney's fees issue for redetermination in light of that. Thank you. Thank you. And Mr. Courtney? Let me ask you a question right away. Sure. Is there anything in the record that would indicate why the judge ordered one division of the pension between the entry of the judgment and the filing of the quadro and a different division in the quadro? The judge doesn't speak directly to it. I think circumstantially her order does. This was Judge Kasin who heard the case initially. If you look at the child support arrangements, because my client, Diane, paid child support for a brief period of time to Mr. Lupa. When the Court determined what her child support would be under our statute, it took that $1,285 as net income and applied the guideline child support of 20% to her total base pay, to her total bonus pay, and to that $1,285 in total as a net sum. So can I tell you, I can look to the record and tell you the judge said that? No, I can't, Judge. So circumstantially what you're saying is the child judge, based on that evidence, was planning on her not paying any taxes on that $1,285 because she treated it as net income? She treated it as net income for the purpose of child support. There's a lot of discussion in both briefs about the tax ramifications and whether you have to have a quadro or whether you don't have to have a quadro. It is an OPM annuity. You don't really have to have a quadro. But you have to have a domestic relations order that says certain things. There was such a domestic relations order entered by agreement of the parties in this case subsequent to the October 08 amended supplemental judgment. It's in the record as Exhibit M. It's been before this Court previously on appeal for only one thing. It looks like a quadro. It sounds like a quadro. And it says my client's entitled to COLA increases, cost of living allowance increases. That issue, just that cost of living allowance issue, was appealed by Mr. Lupo. No one challenged the necessity of drafting this other document. No one challenged the fact that this judgment awards 27.5% of the gross amount of the annuity. Nobody said anything about that. So what do I surmise from the record? I surmise from the record, based upon what Judge Kasin did with the child support, based on the gross language that's contained in the actual annuity division order that was entered subsequent to that, that the 1285 was an amount net of tax. It's very difficult. As Mr. Bacherman's brief points out, he mentioned to you, we're trying to engraft upon his client a responsibility to pay taxes. Not really true. His client is also trying to engraft upon the agreement an interpretation of net based on an OPM regulation. That's why in the brief there's a discussion about why did you take savings out of this before you paid her? Why did you take insurance premiums you were ordered to pay out before you paid her? In fact, his expert testified he could have taken his house payment out and still arrived at a net figure. The only difference that has occurred for my client from the entry of the supplemental domestic relations order, I'll call it a quadruple. The only thing that's happened is she gets a check directly, she pays taxes on the money, and she gets a 1099R at the end of the year so she knows what her taxes are. That really for her is the only change. The hearing period of time, Judge, you mentioned, you questioned, is really September of 2007 until May of 2009, inclusive of those dates. Those are the payments that Mr. Lupa was required to make directly to my client. The amount that he paid was $1,285 every month. I took his annuity statement with his exemptions. Every exemption he wanted to claim, it wasn't 27.5%. $1,285 was never 27.5%. Well, I think your opposing counsel here has made it pretty clear in his briefing that he's not challenging, I mean, his challenge is to just a portion of the contempt order. And I understand that, Judge. I mean, he agrees his client underpaid and that part of the contempt was okay. And it affects the attorney's fees. When you make an argument that I'm not really in contempt, I don't know why I'm in contempt, I would simply point out to you, Judge, there are three items that are clearly violated in that court order, and there's never been an explanation for why that happened. The issue of the 1099, I think, goes to the judge's ability to enforce his own order. It is an issue, it's a purge, it's a term in the purge. When the case was argued below, I suggested a warrant of 27.5% of the gross from day one, and we don't have this problem. That's not what the court order was in October of 2008. That term, that has to mean something. And I think what Judge Rudolph attempted to do was take a reasoned approach to what did that mean, based upon what amounts come out of the annuity, what mandatory amounts, like federal withholding, come out of the annuity. There is no state tax. There's no Social Security withholding. It's just federal tax. I think if you couple that with the court's initial determination on child support, Judge Kasin's order considered the 1285 to be net of tax, or she wouldn't have assessed child support. The rest of her child support provision is very clear that's net income that she's talking about. She calculated that properly under the statute. I think that's telling in this case that that was the net. On the other hand, that child support calculation would be in effect and go on after the domestic relations order was entered. And 1285 or net, the 27.5% net of the total is different than after she paid what she netted after she paid taxes on the gross, 27.5%. Absolutely. And that would make that order subject to modification. If anybody sought to file a motion to modify child support, absolutely it would be modifiable. They're not locked into that number at all. It is a difficult situation, I think, for a trial judge to be faced with when you're interpreting another judge's order. I think that's one of the problems when we rotate divisions the way we do. It's just something we live with. Why was there a different judge? St. Clair County at the time was on, I think, one- or two-year assignments for judges. At the conclusion of their assignments, generally judges don't keep cases. It passes to whoever the successor judge is as long as there's been a final order in the case. I'm not going to tell you I like that. It happens every day. I have a case set Monday with Judge Cook, who's now the presiding judge in the felony division. I don't know if he's going to hear my case Monday or not, to be honest with you, and that's a continuation of a case from a year ago when he was an associate judge. So, Your Honor, I don't like it either. If there was some way to fix that, I would sure be in favor of it as well. But that is part of our problem. That's what we're dealing with. The idea that if you look at what was paid, that I get to deduct my federal tax as the husband, and I deduct whatever else I want, and then I pay you that net amount, and then you also pay taxes on the money that I paid you, but you don't get the benefit of all the money that came in to pay those taxes. He's basically double-dipping on this is what he's doing. He's double-dipping on this is what he's doing. He's taking the money up front. It's being reduced by Judge Kaysen's order. The tax withholding is coming off. Then at the end, my client's getting a lesser sum of the annuity because of the tax withholding and then being required as well to pay the taxes. From the language of the 08 order, and again, I wasn't the attorney. From the language of the order, it appears to me that the parties involved considered that a quadro was necessary. It's even mentioned that the Qualified Domestic Relations order is mentioned in the October 08 judgment. If that is true, then the only way to shift that tax burden is with a quadro. You can't shift the tax burden without it. You can't simply say, I award my wife $1,000 a month from this qualified plan, and that would automatically shift the tax burden for her. That's not how it works. It appears to me from the structure of the order, that's why they got to where they got. They assumed it was subject to a quadro. They assumed to shift the tax liability, they had to do a Qualified Domestic Relations order. Does the record reflect how much your client claims she was underpaid during this 18-month period? It does, Your Honor. I don't have the figure at my fingertips. It was about $9,000 was my recollection. Is there some reason why the trial court just didn't address that? Instead of going around with the amended returns and the 1099s and stuff like that? He did address that. He did? Judge Rudolph did address that. He ordered Mr. Lupit to pay that money to make her whole. The issue, then, is what happened here is there were 1099s issued. The last tax return I recall was about $15,000. 1099s that were issued, penalty notices were received by the IRS. There was an enforcement proceeding. That's why Judge Rudolph, in anticipation that that was going to happen, even though they are unpredictable, when somebody sends a 1099 you haven't claimed, we made the assumption there would be action taken on that. There was. So he did address that. He addressed the amount that was owed that was underpaid. Is your client fighting with the IRS now about this, trying to get it taken care of? There has been on one tax year we have received a notice that they have reversed the tax and penalty. She was hit with a $3,000 penalty for one year. That has now been reversed. I don't know what they're doing with Mr. Lupit. I don't know if Mr. Lupit has heard from anybody. But on the one year I know that has been addressed, it's been reversed. It's all outside the record, right? It is, Your Honor. I just want to make sure. It is, Your Honor. It all occurred within the last 45 days. Are there any other questions? Thank you very much.  Rebuttal? If I understand, I understood your question. The trial judge, Judge Rudolph, did find that Mr. Lupit had underpaid his wife about $8,000. And in paragraph 8, he ordered that he pay that with interest. And we're not disputing that. Now, if I think I understood the rest of the question, it's, well, why didn't he just make him pay more because of the effect it's going to have on the tax? We didn't know what the IRS was going to do. And it is outside of the record. But Mr. Courtney has said that the IRS appears to have taken a position where they were going to seek more money from Mrs. Lupit, and now they've reversed themselves. That tells me that that's exactly why Judge Rudolph shouldn't be making orders about you deduct, you don't deduct, you sent $10,000, you don't send. If what I'm understanding Mr. Courtney to say is right, then they haven't nailed her with the extra income. They've reversed themselves. So I think that I hate doing it because it's outside of the record, but I think we've opened the door to the discussion. And Mr. Lupit has not received any audit notice or anything to suggest that the IRS is looking at him. That doesn't mean they might not in the future, but he hasn't. So I think that suggests that Judge Rudolph just shouldn't get into the deduction business to let the IRS. It may have cost the ex-wife X number of dollars in attorney fees to fight this, too. Well, but I don't believe that he made that. Which would be outside the record, I understand that, but I mean. That's a fair question, but I don't think there's a finding to that effect. And that's, we'd have a different argument about whether that was appropriate or not if he had made that. It just seemed like this whole thing could have been settled really a lot simpler than it has been, you know, to be quite honest with you. I can't argue about that, but, you know, I am here taking a position that the judge entered an order that, right or wrong, of course the judge is trying to do the best that he can with a bad situation, but I think he went too far when he said, don't deduct, amend your return, don't send 1099. He just went too far. He didn't have jurisdiction to do it. And we've heard a lot of reasons in this argument from inside the record and from outside the record of why he went too far. And so we ask for that reversal of that part of the order. Thank you very much. Thanks to both of you for your briefs and arguments. Take this matter under advisement.